# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DOV CHARNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11098-CB |
| | ) | |
| AMERICAN APPAREL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: July 8, 2015
Date Decided: September 11, 2015

Stephen B. Brauerman, Vanessa R. Tiradentes and Sara E. Bussiere of BAYARD, P.A., Wilmington, Delaware; *Attorneys for Plaintiff*.

Stephen C. Norman of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; *Attorneys for Defendant*.

**BOUCHARD, C.**

Plaintiff Dov Charney is the founder and former Chairman and Chief Executive Officer of American Apparel, Inc. (the "Company"). In June 2014, he was suspended from his CEO position. In July 2014, he entered a Nomination, Standstill and Support Agreement (the "Standstill Agreement") and resigned as a director of the Company. In December 2014, Charney was formally terminated as CEO for cause. In May 2015, the Company sued Charney in this Court (C.A. No. 11033-CB) for allegedly breaching the Standstill Agreement (the "Standstill Proceeding").

In this action, Charney seeks to have the Company advance his legal expenses incurred in mounting his defense in the Standstill Proceeding. The parties cross moved for summary judgment over whether Charney is entitled to advancement for the Standstill Proceeding under the Company's charter and his Indemnification Agreement. In this opinion, I conclude that he is not.

The most significant legal issue raised by the cross motions is the meaning of the advancement provision in the Indemnification Agreement, which mandates advancement for events or occurrences "related to the fact" that Charney is or was a director or officer of the Company. For the reasons explained below, I construe this phrase as used in the Indemnification Agreement to be equivalent to the phrase "by reason of the fact" found in Section 145 of the Delaware General Corporation Law, which requires a nexus or causal connection between the claims in the underlying proceeding and one's official corporate capacity to obtain advancement. Construed as such, Charney is not entitled to advancement for the claims asserted in the Standstill Proceeding because none of them implicate his use or abuse of corporate power as a fiduciary of American Apparel.

1

I also find that, because the Company's charter mandates advancement only for current directors and current officers, Charney is not entitled to advancement under the charter for the additional reason that he was neither a current director nor a current officer when he was sued in the Standstill Proceeding in May 2015.

## I.    BACKGROUND[1]

### A.    The Parties

Plaintiff Dov Charney, a California resident, is the founder and former Chairman and Chief Executive Officer (CEO) of American Apparel, Inc.  He is the beneficial owner of approximately 42.3% of the Company.  Charney and the Company are parties to an Indemnification Agreement dated as of March 6, 2008 (the "Indemnification Agreement"), and an Employment Agreement effective as of April 1, 2012 (the "Employment Agreement").

Defendant American Apparel, Inc., a Delaware corporation based in Los Angeles, California, is a vertically integrated clothing designer, manufacturer, and retailer.

Non-party Standard General L.P. ("Standard General") is a New York-based investment firm.

---

[1] The facts are drawn from the pleadings and exhibits submitted in support of the parties' cross motions for summary judgment. *In re Orchard Enters., Inc. Stockholder Litig.*, 88 A.3d 1, 8 (Del. Ch. 2014).

 On September 9, 2015, the Court entered an order approving the substitution of Potter Anderson & Corroon LLP for Skadden, Arps, Slate, Meagher & Flom LLP, the Company's former counsel in this action, which briefed and argued the cross-motions for summary judgment.

## B.   The Company Suspends Charney as CEO

Charney contends that, by June 2014, the Company's Chief Financial Officer, John J. Luttrell, and several of the Company's directors had implemented a plan to oust him from American Apparel.  The Company vigorously denies these allegations, the truth of which is not necessary to resolve the present cross-motions.

On June 18, 2014, at a regular meeting of the Company's board of directors, Allan Mayer, an American Apparel director, hand delivered a letter to Charney notifying him of the board's intention to terminate him for cause under his Employment Agreement.  The letter immediately suspended Charney as American Apparel's President and CEO:

> Effective immediately, you [Charney] will be relieved of all of your job duties and obligations, including as President and Chief Executive Officer; your power to act on the Company's behalf is hereby suspended. During your suspension, you shall not, on behalf of the Company, negotiate or enter into contracts, disburse funds, make any statements on the Company's behalf to the press, public or vendors . . . , attempt to communicate with current employees or former employees with continuing contractual obligations to the Company . . . , or disrupt or interfere in any way with the Company's operations. . . . You also remain subject to continuing obligations under federal securities laws . . . and continuing fiduciary duties under state law.[2]

According to the meeting minutes, the board suggested a willingness to accept Charney's resignation under proposed separation documents, but Charney refused to resign.[3]

After excusing Charney from the meeting, the remaining directors unanimously resolved to suspend him as CEO, to revoke his authority to act for or on behalf of the

---

[2] Def.'s Ex. 4 at 3-4.

[3] Def.'s Ex. 3 at 1.

Company, and to remove him from his position as Chairman of the board. Specifically, the board's resolution provided:

> [E]ffective immediately and until such suspension has been lifted or Mr. Charney has been terminated, Mr. Charney shall have no further authority or responsibility as an officer or agent of the Company, whether as Chief Executive Officer, President or otherwise.
>
> . . .
>
> [E]ffective immediately, any and all power, authority or direction previously granted to Mr. Charney to act for or on behalf of the Company . . . is hereby revoked.
>
> . . .
>
> [E]ffective immediately, Mr. Charney is hereby removed as the Chairman of the Board and shall have no further authority or responsibility as the Chairman of the Board, but such removal shall have no effect on Mr. Charney's position as a member of the Board.[4]

The board subsequently appointed Luttrell to be the Company's Interim CEO.

On June 19, 2014, the Company filed a Form 8-K with the Securities and Exchange Commission ("SEC") disclosing these developments. On June 23, 2014, Charney filed a Schedule 13D with the SEC acknowledging his suspension. Around this time, Charney entered into an agreement with Standard General (acting on behalf of its funds) providing for a financing transaction to acquire additional American Apparel stock and an arrangement governing the voting control of the additional stock and Charney's original stock.[5]

---

[4] Def.'s Ex. 3 at A-1 to A-2.

[5] Def.'s Ex. 7 at Item 3, Ex. A.

On June 27, 2014, Charney purported to call a special meeting of the Company's stockholders to, among other proposed actions, expand the size of the board and elect individuals to those newly created directorships. That same day, a committee of the American Apparel board adopted a one-year stockholder rights plan with a 15% trigger.

C.    **The Standstill Agreement**

On July 9, 2014, three weeks after his suspension as American Apparel's CEO, Charney, the Company, and Standard General (and several of its affiliates) entered into the Standstill Agreement. Broadly speaking, the Standstill Agreement constrained Charney's ability to run a proxy contest by contractually preventing Charney from acting to replace directors and from disparaging the Company. For example, Section 3(c) of the Standstill Agreement prohibits Charney from taking certain actions, including seeking the removal of any member of the American Apparel board, until completion of the Company's 2015 annual meeting, and Section 6(b) prohibits Charney from making any statement to any third party that "disparages or otherwise negatively reflects upon the Company."[6]

The Standstill Agreement also governed whether Charney could return to the Company as CEO. Section 5 sets forth the process by which a committee of the American Apparel board (the "Suitability Committee") would conduct an investigation of the alleged misconduct that led to Charney's suspension. Following its investigation, the Suitability Committee would make a determination whether it was appropriate for

---

[6] Def.'s Ex. 1 (Standstill Agreement) at §§ 3(c), 6(b).

Charney to be reinstated as CEO. Section 5 further provided that, in the interim, Charney would serve as a consultant to the Company, not as an officer or employee:

> Charney shall not serve as CEO of the Company or serve as an officer or employee of the Company or any of its subsidiaries unless and until the Investigation is completed and the Suitability Committee makes a Clearance Determination in favor of such service. From the date hereof through the date of the Clearance Determination, Charney shall serve as a consultant to the Company with no supervisory authority over any employees of the Company.[7]

Separate counsel represented each of the three primary parties to the Standstill Agreement (Charney, the Company, and Standard General)[8] and Charney signed the agreement in his personal capacity without reference to any corporate affiliation.

In accordance with Section 1(a) of the Standstill Agreement, Charney resigned as a director of the Company effective ten days after the Company filed a Schedule 14F-1 Information Statement with the SEC. The Company filed that Information Statement on July 23, 2014.[9]

On December 16, 2014, following the Suitability Committee's investigation, the American Apparel board terminated Charney's employment with the Company. In doing

---

[7] Def.'s Ex. 1 (Standstill Agreement) at § 5(d).

[8] Charney was represented by Glaser, Weil, Fink, Howard, Avchen & Shapiro LLP; the Company was represented by Skadden, Arps, Slate, Meagher & Flom LLP; and Standard General was represented by Debevoise & Plimpton LLP.

[9] American Apparel, Inc., Information Statement (Schedule 14F-1) (July 23, 2014). I take judicial notice of the date of this SEC filing. *See In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170-71 (Del. 2006).

so, the board determined that Charney's misconduct constituted cause to terminate him under his Employment Agreement.[10]

### D. The Standstill Proceeding

On May 15, 2015, the Company filed the Standstill Proceeding against Charney in this Court alleging that he had violated the Standstill Agreement. In addition to several generalized allegations about Charney's conduct, the Company specifically alleged that Charney had taken the following actions in violation of the Standstill Agreement:

- According to a December 18, 2014, *Bloomberg* article, Charney was discussing a potential takeover of the Company with Irving Place Capital, a private equity firm, in violation of Section 3(e), which prohibits him from publicly proposing or participating in any extraordinary corporate transaction, and Section 3(f), which prohibits him from purchasing or causing to be purchased any shares of American Apparel stock.[11]

- Charney participated in American Apparel employee meetings in or about May 2015, and expressed anti-board sentiments at those meetings in violation of Section 3(a)(ii), which prohibits him from advising, encouraging, or influencing any person with respect to voting shares of American Apparel stock.[12]

- In articles published by the *Los Angeles Times*, *LA Weekly*, and *BuzzFeed* in April 2015, Charney had made negative statements about the Company in violation of Section 6(b), which prohibits him from publicly disparaging the Company.[13]

- On May 1, 2015, in connection with a lawsuit seeking to invalidate the director election results of the Company's 2014 annual meeting, Charney

---

[10] Def.'s Ex. 9; Answer ¶ 16.

[11] Pl.'s Ex. A (Standstill Proceeding Complaint) ¶¶ 65-72.

[12] *Id.* ¶¶ 58-64.

[13] *Id.* ¶¶ 73-80.

7

submitted a declaration in support of the plaintiff's motion for a preliminary injunction in violation of Sections 3(c) and 3(h), which prohibit him from directly or indirectly assisting a third party in seeking to remove American Apparel directors.[14]

The Company's complaint in the Standstill Proceeding asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

On May 21, 2015, the Company moved for a temporary restraining order against Charney. In briefing that motion, the Company submitted an affidavit from Paula Schneider, the current CEO of American Apparel, regarding a May 21, 2015, conversation she had had with Ilse Metchek, a mutual friend of hers and Charney's. As reflected in her affidavit, Schneider's impression from her conversation with Metchek was that "Charney was actively encouraging potential candidates to run on a slate of directors that would represent his interest in connection with the 2015 annual meeting."[15] According to the Company, this conduct violated Sections 3(a), 3(b), and 3(c) of the Standstill Agreement, which generally prohibit Charney from supporting a third party in soliciting proxies and proposing a nominee for election to the board.

On June 1, 2015, after briefing and oral argument, I granted the Company's motion for a temporary restraining order. On June 8, 2015, I granted the parties' stipulated order extending the relief provided by the temporary restraining order until the conclusion of the Company's 2015 annual meeting, which was held on July 16, 2015.

---

[14] *Id.* ¶¶ 50-57; Def.'s Op. Br. 11-12.

[15] Pl.'s Ex. P (Schneider Aff.) ¶ 7.

8

**E.    The Company Denies Charney's Demand for Advancement**

By email dated May 23, 2015, Charney made a demand on the Company under the Indemnification Agreement, the Employment Agreement, and the Company's bylaws for advancement of his attorneys' fees and expenses incurred in connection with the Standstill Proceeding.  Charney's demand included an undertaking to repay if it is ultimately determined that he is not entitled to indemnification.[16]  By letter dated May 26, 2015, the Company, through its counsel, denied Charney's advancement demand.[17]

**F.    Procedural History**

On June 4, 2015, Charney filed a Verified Complaint for Advancement, asserting two claims for relief: (i) advancement for his attorneys' fees and expenses incurred in connection with the Standstill Proceeding under the Indemnification Agreement, the Employment Agreement, and the Company's bylaws (Count I); and (ii) indemnification for his attorneys' fees and expenses incurred in connection with this action under the Indemnification Agreement and applicable law (Count II).  On June 12, 2015, the Company filed its Answer.

On June 19, 2015, the parties cross moved for summary judgment.  Charney contends he is entitled to advancement under the Amended and Restated Certificate of Incorporation of American Apparel, Inc., dated December 12, 2007 (the "Charter"), and the Indemnification Agreement, and to indemnification for this advancement proceeding

---

[16] Pl.'s Ex. N.

[17] Pl.'s Ex. O.

9

under the Indemnification Agreement and applicable law.[18]  The Company contends that Charney is not entitled to advancement under either of these documents.  On July 8, 2015, I heard oral argument on the parties' motions.

## II.    LEGAL ANALYSIS

### A.    Legal Standard

Under Court of Chancery Rule 56(c), summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[19]  The evidence must be viewed in the light most favorable to the non-moving party, and summary judgment is warranted only where no rational trier of fact would fail to find that the moving party is entitled to judgment.[20]  "[T]he use of summary judgment is particularly appropriate in advancement disputes"[21] because the controversy is typically limited to a legal question:  whether the underlying proceeding "trigger[s] a right to advancement under the terms of a corporate instrument."[22]

---

[18]  Although Charney's complaint also sought advancement under the Employment Agreement and the Company's bylaws, he not did move for summary judgment based on those provisions.  Pl.'s Op. Br. 14 n.6.

[19] Ct. Ch. R. 56(c).

[20] *See Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1150-51 (Del. 2002) ("[T]he judge as gate-keeper merely considers whether the finder of fact could come to a rational conclusion either way . . . .").

[21] *Donohue v. Corning*, 949 A.2d 574, 576 (Del. Ch. 2008).

[22] *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *6 (Del. Ch. Jan. 23, 2006).

Although Court of Chancery Rule 56(h) permits the Court to deem cross motions for summary judgment "to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions," the rule does not apply when one party argues that a genuine issue of material fact exists.[23] Charney makes that argument here,[24] thus I will examine each motion on its own merit.[25] As explained below, I conclude that the alleged factual disputes Charney has identified do not raise a genuine issue of material fact so as to preclude entry of summary judgment in the Company's favor.

Here, Charney asserts he is entitled to advancement under the Company's Charter and his Indemnification Agreement. Before addressing those issues, I address the legal effect, if any, of the Standstill Agreement with respect to Charney's advancement rights.

## B. The Standstill Agreement Does Not Grant Charney a Right to Advancement

Charney's brief created some confusion as to whether he was contending that the Standstill Agreement provided him an independent source of advancement separate and apart from the Charter and Indemnification Agreement. In a terse argument, he asserted at one point that the "plain language" of Section 2(g) of the Standstill Agreement

---

[23] *See O'Neill v. Town of Middletown*, 2007 WL 2752981, at *6 n.34 (Del. Ch. Mar. 29, 2007) (concluding that Court of Chancery Rule 56(h) does not apply when at least one party argues, even unpersuasively, that there is a genuine issue of material fact).

[24] Pl.'s Ans. Br. 20 n.8. This position appears to be at odds with Charney's earlier assertion that the parties had "stipulated to resolve this matter on cross-motions for summary judgment." Pl.'s Op. Br. 15 n.7.

[25] *See Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1007 (Del. Ch. 2007) (noting that the Court reviews each motion separately on cross-motions for summary judgment).

"requires American Apparel to advance the fees and costs [he] incurs in defending" the Standstill Proceeding and, at another point, that the "plain language" of that provision merely "confirms that [Charney's] existing advancement rights apply to" the subject matter of the proceeding.[26]

Section 2(g) of the Standstill Agreement states, as follows:

> The Company shall abide by its obligations under its Amended and Restated Certificate of Incorporation, the Company Bylaws and other indemnification agreements in effect on the date hereof . . . to indemnify its existing Independent Directors and officers and all New Board Designees for any damages arising out of actions to remove Charney as CEO and all related matters, including negotiation and execution of this Agreement and the transactions and covenants contemplated thereby.[27]

At oral argument, Charney's counsel confirmed that Charney does not contend that Section 2(g) provides an independent source of a right to advancement.[28] That was a sensible concession. Section 2(g) speaks of indemnification "for any damages" and does not discuss advancement. The plain thrust of the provision, moreover, was to clarify that the Company would "abide" by its indemnification obligations arising of out a determination to remove Charney as CEO, a matter that would create an obvious litigation exposure for the Company's directors and officers. In other words, rather than providing a separate grant of rights, Section 2(g) merely confirmed preexisting rights to

---

[26] Pl.'s Op. Br. 17-18.

[27] Def.'s Ex. 1 (Standstill Agreement) at § 2(g). The Standstill Agreement is governed by Delaware law. *Id.* at § 11.

[28] Tr. of Oral Arg. at 11-12.

12

indemnification. Thus, the provision has no bearing on the scope of Charney's alleged advancement rights or the resolution of the pending cross-motions.

## C. Charney is Not Entitled to Advancement under the Charter

Although Charney did not identify the Company's Charter as a source of advancement rights in his complaint, it became the lead argument in his brief. Article Eighth, Paragraph B of the Company's Charter provides that the Company must indemnify any person "to the full extent permitted" by 8 *Del. C.* § 145 and that the Company must advance expenses to any "officer or director" who may be entitled to such indemnification:

> The Corporation, to the full extent permitted by Section 145 of the [Delaware General Corporation Law ("DGCL")], as amended from time to time, shall indemnify all persons whom it may indemnify pursuant thereto. Expenses (including attorneys' fees) incurred by an officer or director in defending any civil, criminal, administrative, or investigative action, suit or proceeding for which such officer or director may be entitled to indemnification hereunder shall be paid by the Corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the Corporation as authorized hereby.[29]

"[T]he rules that govern the interpretation of statutes, contracts, and other written instruments apply to the interpretation of corporate charters and bylaws."[30] Delaware

---

[29] Pl.'s Ex. K (Charter) at Art. EIGHTH ¶ B.

[30] *Sassano v. CIBC World Mkts. Corp.*, 948 A.2d 453, 462 (Del. Ch. 2008).

courts interpret a contractual term that is reasonably or fairly susceptible to only one interpretation according to the term's plain meaning.[31]

Charney contends that, under Article Eighth, Paragraph B of the Company's Charter, the Company's "advancement obligations are defined by and flow from its indemnification obligations" such that he is entitled to advancement for his expenses in the Standstill Proceeding if the Company could indemnify him for the Standstill Proceeding under 8 *Del. C.* § 145.[32] I disagree with this contention because, as explained below, the Company's indemnification and advancement obligations under the Charter are not coterminous with respect to former, as opposed to current, directors and officers.

Under Delaware law, although "the rights to indemnification and advancement are correlative, they are still discrete and independent rights."[33] "Because rights to indemnification and advancement differ in important ways, [Delaware] courts have refused to recognize claims for advancement not granted in specific language clearly suggesting such rights."[34] As Chancellor Allen concluded over twenty years ago in *Advanced Mining Systems, Inc. v. Fricke*,[35] an obligation in a corporation's charter or bylaw to indemnify an individual does not, on its own, include an obligation to advance

---

[31] *See Osborn v. Kemp*, 991 A.2d 1153, 1159-60 (Del. 2010).

[32] Pl.'s Op. Br. 19-23.

[33] *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 509-10 (Del. 2005).

[34] *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 589 (Del. Ch. 2006).

[35] 623 A.2d 82 (Del. Ch. 1992).

expenses that may be indemnifiable.[36]  Therefore, the Charter will only be read to require advancement for Charney if it mandates advancement explicitly.  It does not.

The first sentence of Article Eighth, Paragraph B, which governs indemnification, makes mandatory what Sections 145(a) and 145(b) of the Delaware General Corporation Law permit, *i.e.*, for a corporation to indemnify any person sued "by reason of the fact that the person *is or was* a director, officer, employee or agent of the corporation."[37]  In other words, insofar as indemnification is concerned, this first sentence specifically incorporates statutory provisions expressly applicable to both current and former directors and officers.  By contrast, the second sentence of Article Eighth, Paragraph B, which governs advancement, refers simply to "officers" and "directors" without any further qualification.  When the words "officers" and "directors" are not qualified by the adjective "former" (or a similar adjective), Delaware courts have interpreted those words to refer to current officers and current directors.

In *Schoon v. Troy Corp.*,[38] for example, the Court concluded that a bylaw amendment, which changed the corporation's advancement obligations from "expenses incurred by any present or former director" to "losses reasonably incurred by a director or officer," had the effect of removing former directors from the class of persons entitled to

---

[36] *Id.* at 84.

[37] 8 *Del. C.* §§ 145(a)-(b) (emphasis added).

[38] 948 A.2d 1157 (Del. Ch. 2008).

15

advancement.[39] The key provision of Section 145 governing advancement distinguishes between current and former directors and officers in a manner similar to *Schoon*.

Specifically, the first sentence of Section 145(e) refers to a current director or officer simply as a "director" or "officer" without any qualifier. It provides, in relevant part, that a corporation may advance "[e]xpenses (including attorneys' fees) incurred by an officer or director in defending any . . . action, suit or proceeding . . . in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation . . . ." The second sentence of Section 145(e) treats former directors and officers differently. It provides that "[s]uch expenses (including attorneys' fees) incurred by *former* directors and officers . . . may be so paid upon such terms and conditions, if any, as the corporation deems appropriate."[40]

Based on these authorities and the absence of any reference to "former" directors or officers (or any similar qualifier) in enumerating the Company's advancement obligations in Article Eighth, Paragraph B, I conclude that the plain language of the Charter affords mandatory advancement rights only to current directors or officers of the

---

[39] *See id.* at 1165-67; *see also King v. DAG SPE Managing Member, Inc.*, 2013 WL 6870348, at *5-6 (Del. Ch. Dec. 23, 2013) (concluding that a former director does not have inspection rights under 8 *Del. C.* § 220, which provides that "[a]ny director shall have the right to examine the corporation's stock ledger, a list of its stockholders and its other books and records for a purpose reasonably related to the director's position as a director").

[40] 8 *Del. C.* § 145(e) (emphasis added).

Company as of the time suit is filed against them.[41]  Thus, because Charney was neither an officer nor a director of American Apparel when the Standstill Proceeding was filed on May 15, 2015—he was a former officer and a former director at that time—he is not entitled to advancement for that proceeding under the Company's Charter.[42]

### D.    Charney Is Not Entitled to Advancement Under The Indemnification Agreement

Under 8 *Del. C.* § 145(f), the advancement rights of a former director or officer set forth in the corporation's charter or bylaws are not "exclusive of any other rights to which those seeking . . . advancement of expenses may be entitled under any . . . agreement, . . . both as to action in such person's official capacity and as to action in another capacity while holding such office."  Here, separate from and in addition to the Charter provision discussed above, the Company agreed to indemnify and to advance certain of Charney's expenses under his Indemnification Agreement, which is governed by Delaware law.[43]  The two relevant provisions of the Indemnification Agreement the

---

[41] *See Schoon* at 1165-66 (noting that advancement rights vest upon the filing of a lawsuit) (citing *Salaman v. Nat'l Media Corp.*, 1992 WL 808095, at \*6 (Del. Super. Oct. 8, 1992)).

[42] Even if the Charter did afford advancement rights to former directors or officers, Charney would not be entitled to advancement under Article Eighth, Paragraph B because Charney was not made a party to the Standstill Proceeding "by reason of the fact" that he formerly was a director or officer of the Company. *See* Section II.D.  The "by reason of the fact" requirement is the standard from Section 145 that is incorporated into Article Eighth, Paragraph B.

[43] Def.'s Ex. 2 (Indemnification Agreement) at § 24.

17

parties have identified are Sections 2(b) and 17. The first question to be analyzed is how these provisions operate with each other in the context of the Indemnification Agreement.

### 1. The Relationship Between Sections 2 and 17 of the Indemnification Agreement

Section 2 of the Indemnification Agreement enumerates in four subparts certain rights of indemnification and advancement the Company agreed to provide to Charney. Section 2(b) is the core advancement provision. To construe this provision, it is necessary to understand the indemnification rights afforded under Section 2 and, in particular, the defined terms that the indemnification provision has in common with the advancement provision.

Section 2(a) is the core indemnification provision. It states, in relevant part, as follows:

> In the event [Charney] was, is or becomes a party to or witness or other participant in, or is threatened to be made a party to or witness or other participant in, a Claim by reason of (or arising in part out of) an Indemnifiable Event, the Company shall indemnify [Charney] to the fullest extent permitted by law . . . against any and all Indemnifiable Amounts.

For purposes of this opinion, the term "Claim" can be simplified to mean a proceeding.[44] The term "Indemnifiable Event," which also is incorporated into the advancement provision in Section 2(b), is defined as follows:

_____

[44] The full definition of "Claim" is "any threatened, asserted, pending or completed action, suit or proceeding, or any appeal thereof, or any inquiry or investigation, whether instituted by the Company or any governmental agency or other party, that Indemnitee in good faith believes might lead to the institution of any such action, suit or proceeding, whether civil, criminal, administrative, investigative or other, including any arbitration or other alternative dispute resolution mechanism." Def.'s Ex. 2 (Indemnification Agreement) at § 1(c).

18

any event or occurrence, whether occurring before, on or after the date of this Agreement, ***related to the fact that*** [Charney] is or was a director and/or officer or fiduciary of the Company, or is or was serving at the request of the Company as a director, officer, employee, trustee, agent or fiduciary of another Person, or ***by reason of*** anything done or not done by [Charney] in any such capacity.[45]

As discussed below, the key interpretative question is the meaning of the phrase "related to the fact" as used in this defined term.

Section 2(b) of the Indemnification Agreement governs advancement. It states, in relevant part: "If so requested by [Charney], the Company shall advance . . . any and all Expenses incurred by [Charney]."[46] The term "Expenses" is defined to include "all fees, costs and expenses incurred in connection with any Claim relating to any Indemnifiable Event . . . ."[47] As noted above, the term "Claim" can be simplified to mean a proceeding. Because the Standstill Proceeding does not implicate any claims arising from Charney's service as a director or officer of another entity at the request of the Company, the definition of the term "Indemnifiable Event" quoted above can be simplified for purposes of this opinion to mean "any event or occurrence related to the fact that Charney is or was a director and/or officer of the Company, or by reason of anything done or not done by Charney in any such capacity." Incorporating the simplified definitions of "Expenses," "Claim," and "Indemnifiable Event," Section 2(b) of the Indemnification Agreement reads as follows:

---

[45] Def.'s Ex. 2 (Indemnification Agreement) at § 1(f) (emphasis added).

[46] Def.'s Ex. 2 (Indemnification Agreement) at § 2(b).

[47] *Id.* at § 1(d).

The Company shall advance any and all [Expenses] expenses incurred in connection with any [Claim] proceeding relating to any [Indemnifiable Event] event or occurrence related to the fact that Charney is or was a director and/or officer of the Company, or by reason of anything done or not done by Charney in any such capacity.

Section 17 appears toward the end of the Indemnification Agreement, among a series of standard provisions governing severability, the use of counterparts, choice of law, and the like. It states in its entirety, as follows:

This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors (including any direct or indirect successor by purchase, merger, consolidation or otherwise to all or substantially all of the business and/or assets of the Company), assigns, spouses, heirs, executors and personal and legal representatives. The Company shall require and cause any successor (whether direct or indirect by purchase, merger, consolidation, or otherwise) to all or substantially all of the business and/or assets of the Company, by written agreement in form and substance reasonably satisfactory to [Charney] and his or her counsel, expressly to assume and agree to perform this Agreement in the same manner and to the same extent that the Company would be required to perform if no such succession had taken place. *This Agreement,* and all agreements and obligations of the Company contained herein, *shall continue in effect during the period [Charney] is an officer or director of the Company* (or is or was serving at the request of the Company as a director, officer, employee, trustee, agent or fiduciary of another Person) *and shall continue thereafter so long as [Charney] shall be subject to any Claim by reason of his or her Corporate Status* (as defined below), whether or not he or she [sic] is then acting or serving in any such capacity at the time any liability or expense is incurred for which indemnification is required to be provided by the Company under this Agreement. "Corporate Status" means that status of a person who is or was a director and/or officer of [sic] fiduciary of the Company, or is or was serving at the request of the Company as a director, officer, employee, trustee, agent or fiduciary of another Person.[48]

---

[48] Def.'s Ex. 2 (Indemnification Agreement) at § 17 (emphasis added).

The Company interprets the third sentence of Section 17 to mean that once Charney was no longer a director or officer of American Apparel, he "is entitled to advancement only if he demonstrates that the claims in the Standstill Litigation are brought 'by reason of' his status as a director, officer or fiduciary of the Company."[49] In other words, the Company argues that, insofar as former fiduciaries are concerned, the "by reason of" clause in Section 17 trumps the language used in Section 2(b) to define the scope of the Company's advancement obligations. Thus, according to the Company, because Charney was named a party to the Standstill Proceeding in May 2015, after he ceased to be a fiduciary of the Company, it is unnecessary to consider whether the matters over which Charney was sued fall within the definition of "Indemnifiable Event" under Section 2(b) if those matters did not arise "by reason of" Charney's status as a former director or officer of the Company. Because Section 17 governs "all agreements and obligations of the Company" contained in the Indemnification Agreement, the same logic would apply regarding a claim for indemnification under Section 2(a).

Delaware law "adheres to the objective theory of contracts,"[50] which requires a court to interpret a particular contractual term to mean "what a reasonable person in the position of the parties would have thought it meant."[51] Delaware courts also construe

---

[49] Def.'s Op. Br. 17.

[50] *Salamone v. Gorman*, 106 A.3d 354, 367 (Del. 2014).

[51] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).

agreements as a whole and give meaning to all provisions.[52] "The meaning inferred from a particular provision cannot control the meaning of the entire agreement if such an inference conflicts with the agreement's overall scheme or plan."[53]

In my view, the only reasonable interpretation of Section 17 when read together with the other provisions of the Indemnification Agreement is as a durational provision to define the period of time the obligations in the Indemnification Agreement remain in effect and not, as the Company advocates, as a provision that specifies the circumstances in which Charney would be eligible to receive advancement (or indemnification) once he is no longer a director or officer of the Company. Reading Section 17 in this manner, the provisions of the Indemnification Agreement would remain in effect (a) during the period Charney was a director or officer of the Company (or serving at the request of the Company as a director, officer, employee, trustee, agent or fiduciary of another entity), and (b) thereafter for as long he is exposed to being sued "by reason of" his former status as a fiduciary of the Company, *i.e.*, until such time as such claims would be time-barred.

This construction follows from the ostensible purpose of the operative sentence of Section 17, which is to define the period of time when all of the "obligations of the Company" contained in the Indemnification Agreement "shall continue in effect." It also follows from the context in which this sentence appears within Section 17. The first

---

[52] *See Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396-97 (Del. 2010) ("[Delaware courts] will read a contract as a whole and . . . will give each provision and term effect, so as not to render any part of the contract mere surplusage.").

[53] *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012).

sentence of Section 17 defines who is bound by the Indemnification Agreement. The second sentence ensures that the Company will cause any successor to expressly assume the obligations in the Indemnification Agreement. It is logical that, after defining the universe of parties to be bound under the Indemnification Agreement, the parties would then address the duration of the obligations owed.

Significantly, construing the last sentence of Section 17 as a durational provision harmonizes that provision with Section 2 of the Indemnification Agreement. As discussed above, Section 2 grants Charney a mandatory right to indemnification as well as advancement for claims falling within the definition of "Indemnifiable Event." In other words, Section 2 creates and carefully defines the scope of the indemnification and advancement obligations the Company owes to Charney. It would be illogical to construe Section 17 to cover the same ground as Section 2. Instead, following the principle that "a particular provision cannot control" if it "conflicts with the agreement's overall scheme,"[54] it is more reasonable to infer that the drafters of the Indemnification Agreement intended Sections 2 and 17 of the Indemnification Agreement to serve different functions. This is achieved by construing the third sentence of Section 17 as a durational provision and not as one that defines the scope of the Company's indemnification or advancement obligations to Charney. Interpreted as such, Section 17 would answer the question whether the Company's obligations under the Indemnification Agreement remain in effect at a given point in time and, if so, one would then look to

---

[54] *Id.*

Section 2 to determine if the nature of the claims asserted satisfy the definition of an "Indemnifiable Event" that is incorporated in the advancement provision in Section 2(b).

Applying this construction of Section 17, it is beyond dispute that the Indemnification Agreement continued to be in effect when the Standstill Proceeding was filed. Charney was no longer a director or officer or fiduciary of the Company at that time, but he was exposed to being sued "by reason of" his status as a former officer and director of the Company at that time. "Although claims for breach of fiduciary duty brought in this court are governed by the equitable doctrine of laches, rather than by strict application of the statute of limitations that applies at law, equity follows the law when that is sensible, and the statute of limitations will apply by analogy."[55] Under Delaware law, the analogous statute of limitations for a breach of fiduciary duty claim is three years.[56] The Standstill Proceeding was initiated well within three years of Charney's ceasing to be a director or officer of the Company and, thus, he was exposed to being sued "by reason of" his status as a former director or officer at such time. The Company makes no argument to contrary.

The next question to be considered is whether the alleged misconduct that forms the basis of the claims in the Standstill Proceeding falls within the scope of the advancement provision in Section 2(b) and, in particular, whether such allegations satisfy the "Indemnifiable Event" standard incorporated in that provision.

---

[55] *In re Sirius XM S'holder Litig.*, 2013 WL 5411268, at *4 (Del. Ch. Sept. 27, 2013).

[56] 10 *Del. C.* § 8106.

## 2. The Scope of the Company's Obligations under Section 2(b)

As discussed above, using simplified definitions of the terms "Expenses," "Claim," and "Indemnifiable Event," Section 2(b) of the Indemnification Agreement would read as follows:

> The Company shall advance any and all expenses incurred in connection with any proceeding relating to any event or occurrence related to the fact that Charney is or was a director and/or officer of the Company, or by reason of anything done or not done by Charney in any such capacity.

The phrase "event or occurrence" refers to the misconduct alleged in the underlying proceeding that forms the basis of Charney's alleged breaches of the Standstill Agreement. Thus, the inquiry in this case is whether those actions are ***related to the fact*** that Charney is or was a director and/or officer of the Company, or occurred ***by reason of*** anything done or not done by Charney in any such capacity. Given this focus, the circumstances of when Charney executed the Standstill Agreement and the general subject matter of the Standstill Agreement are largely irrelevant—what matters is the substance of the Company's allegations against Charney in the Standstill Proceeding.

Charney contends that the "related to the fact" phrase is broader in scope than the "by reason of the fact" phrase that appears in 8 *Del. C.* § 145 and that has been the subject of most advancement disputes in this Court. Without specifically defining "related to the fact," Charney contends he is entitled to advancement for the Standstill Proceeding because some of his alleged violations of the Standstill Agreement occurred before his termination as CEO in December 2014, and because the substance of his alleged violations (in general, his efforts to regain control of the Company and his

25

disparagement of the Company) are all related to the fact that he was a director and/or officer. According to Charney, "[b]ut for [his] former corporate service and his desire to regain the positions wrongfully taken from him, he never would have entered into the Standstill Agreement and could not have been accused of breaching it."[57]

The Company contends that Charney's "but for" interpretation of "related to the fact" would lead to absurd results because it "is so broad that it would encompass *any* acts, committed at *any* time, that Mr. Charney claims had *any* relation to the Company."[58] The Company argues that the phrase "related to the fact" should not be interpreted as broader than the phrase "by reason of the fact" used in 8 *Del. C.* § 145. According to the Company, Charney's violations of the Standstill Agreement were not "by reason of the fact" that he was a director or officer of American Apparel because he engaged in that conduct in his personal capacity without using any corporate power.[59]

Before interpreting "related to the fact" here, it is useful to review the meaning of "by reason of the fact" under Delaware law. In *Homestore, Inc. v. Tafeen*,[60] the Delaware Supreme Court explained that a proceeding for which advancement is sought is "by reason of the fact" that one was a director or officer "if there is a nexus or causal

---

[57] Pl.'s Op. Br. 32.

[58] Def.'s Ans. Br. 23-24.

[59] Def.'s Ans. Br. 16-22, 28-29.

[60] 888 A.2d 204 (Del. 2005).

26

connection between" the underlying proceeding and "one's official corporate capacity."[61]
A causal connection exists "if the corporate powers were used or necessary for the commission of the alleged misconduct."[62] Against this background, I must interpret the phrase "related to the fact" as it appears in the Indemnification Agreement.

"When interpreting a contract, the role of a court is to effectuate the parties' intent. In doing so, [a court is] constrained by a combination of the parties' words and the plain meaning of those words where no special meaning is intended."[63] "The language of the [a]greement must therefore be the starting point."[64] "Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language."[65]

The Indemnification Agreement does not define "related to the fact." The parties have not cited any authority interpreting "related to the fact" in a corporate instrument or agreement providing for advancement,[66] nor have they provided any precise linguistic

---

[61] *Id.* at 214.

[62] *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch. 2007).

[63] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006).

[64] *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992).

[65] *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).

[66] In support of his expansive interpretation of "related to the fact," Charney relies on two decisions of this Court: *Lillis v. AT&T Corp.,* 904 A.2d 325 (Del. Ch. 2006), and *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058 (Del. Ch. Jan. 23, 2006). *Lillis* construed the term "in connection with" as used in an expense reimbursement provision

definition of the term. The Court's own research shows that the phrase appears to be fairly prevalent in indemnification agreements,[67] and that at least one decision of this Court, *Underbrink v. Warrior Energy Services Corp.*,[68] analyzed an indemnification provision using the phrase.

In *Underbrink*, the bylaws of the company at issue (Warrior) indemnified a director against claims arising out of events "related to the fact that the Indemnitee is or was a director . . . ."[69] The Court did not specifically address the meaning of "related to the fact," but it appeared to use the phrase interchangeably with the phrase "by reason of the fact" in its analysis:

---

in certain change of control agreements. 904 A.2d at 329. *DeLucca* construed the phrase "in connection with or arising out of or related to" as used in a limited liability company agreement. 2006 WL 224058, at *9-10. Both decisions understandably acknowledged that these phrases generally are construed broadly. Neither decision, however, involved a corporate instrument or agreement subject to the limitations of 8 *Del. C.* § 145. "[U]nlike Section 145(e), the LLC Act does not preclude a company from providing advancement rights beyond fees and expenses incurred 'in defending' a covered proceeding. . . . [T]he LLC Act gives contracting parties complete discretion in establishing the scope of indemnification and advancement rights . . . ." *Fillip v. Centerstone Linen Servs.*, LLC, 2014 WL 1821299, at *6 (Del. Ch. May 1, 2014) (citations omitted). *Lillis* similarly did not address director and officer advancement under Section 145.

[67] *See, e.g.*, 2 Corp. Forms § 18:19 (September 2015) (using "related to the fact" in the definition of "Indemnifiable Event" in an example form indemnification agreement); Richard D. Harroch & Gregory C. Smith, Start-up & Emerging Companies 1-91 (2003) (same); *Indemnifiable Event Sample Clauses*, Law Insider, https://www.lawinsider.com/clause/certain-definitions/indemnifiable-event (providing numerous excerpts from indemnification agreements that use "related to the fact").

[68] 2008 WL 2262316 (Del. Ch. May 30, 2008).

[69] *Id.* at *7. The bylaws defined an "Indemnitee" to include a director who may be made party to a proceeding "by reason of his Corporate Status." *Id.*

> A claim not "arising out of any event or occurrence ***related to the fact*** [the claimant] is or was a director" would not qualify for indemnification under Article V, § 1. In seeking advancement for expenses related to the defense of claims not brought ***by reason of the fact*** they were directors of Warrior, Plaintiffs are asking for advancement of expenses for which indemnification is not possible. I find such a request unreasonable under the terms of the 2006 Bylaws.[70]

The Court went on to explain that the "guiding principle" to implement its ruling would involve application of the "nexus or causal connection" standard the Supreme Court articulated in *Tafeen* to interpret the "by reason of the fact" requirement of Section 145.[71]

Dictionary references similarly support treating "related to the fact" and "by reason of the fact" as interchangeable phrases for purposes of the Indemnification Agreement. "Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract."[72] The *New Oxford American Dictionary* defines "be related" when that verb is used with an object (*e.g.*, "high unemployment is related to high crime rates") as "be causally connected."[73] Applying

---

[70] *Id.* at \*16 (emphases added). *See also O'Brien v. IAC/Interactive Corp.*, 2010 WL 3385798, at \*13 (Del. Ch. Aug. 27, 2010) *aff'd sub nom. IAC/InterActiveCorp v. O'Brien*, 26 A.3d 174 (Del. 2011) (discussing "related to the fact" and "by reason of the fact" side-by-side when comparing an indemnification agreement governed by Florida law and 8 *Del. C.* § 145(a), without making note of any difference between the two).

[71] *Id.*

[72] *Lorillard*, 903 A.2d at 738; *see also Perconti v. Thornton Oil Corp.*, 2002 WL 982419, at \*4 (Del. Ch. May 3, 2002) (interpreting "by reason of the fact" in 8 *Del. C.* § 145 by reference to the definition of "by reason of" in *Black's Law Dictionary*).

[73] *New Oxford American Dictionary* 1473 (3rd ed. 2010). The *New Oxford American Dictionary* also defines "relate to" when that verb is used without an object (*e.g.*, "the new legislation related to corporate activities") as "have reference to; concern." *Id.*

that definition, "related to the fact" would mean "be causally connected to the fact" and thus would be equivalent to the phrase "by reason of the fact" in Section 145 as construed by the Supreme Court in *Tafeen*. In my view, this is the only reasonable interpretation of "related to the fact" as used in the Indemnification Agreement for two reasons.

First, to construe "related to the fact" more broadly as Charney advocates to require only a "but for" connection to his status as former fiduciary of American Apparel would lead to absurd results to which no reasonable person would have agreed. Consider, for example, that a stockholder sues Charney for breaching his fiduciary duty as an American Apparel director, and Charney is deposed in that proceeding. During his deposition, Charney commits a tort against the stenographer, who then files suit against Charney. Adopting Charney's interpretation, he would be entitled to advancement for the tort lawsuit because, "but for" his position as an American Apparel director, he would not have been at the deposition and thus would not have engaged in the tortious conduct. Such an example may seem extreme, but from a legal perspective, it is not so different from the present situation. According to Charney, his alleged breach of the Indemnification Agreement triggers advancement because he never would have entered into the contract "but for" his roles at American Apparel. In my opinion, no reasonable corporation would have subjected itself to such attenuated advancement obligations.[74]

---

[74] *See Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010) ("An unreasonable interpretation produces an absurd result or one that no reasonable person would have accepted when entering the contract.").

Second, to construe "related to the fact" more broadly than "by reason of the fact" as used in Section 145, would render the indemnification provision in the Indemnification Agreement invalid under Delaware law in my view. As explained above, the definition of "Indemnifiable Event" in which the phrase "related to the fact" appears is incorporated into both the indemnification and advancement provisions of the Indemnification Agreement.[75] Although 8 *Del. C.* § 145(f) allows corporations to provide indemnification rights via contract, substantial authority supports the proposition that such contractual provisions must comply with the requirements contained in the rest of 8 *Del. C.* § 145,[76] which would include the requirement in subsections 145(a) and (b) that a person must be made a party to a proceeding "by reason of the fact" that he or she is or was a director, officer, employee or agent of the corporation to receive indemnification. Thus, any definition of "related to the fact" that is more expansive than "by reason of the fact" would, as applied in the indemnification section of the Indemnification Agreement,

---

[75] Def.'s Ex. 2 (Indemnification Agreement) at §§ 2(a)-2(b) (providing for indemnification of Indemnifiable Amounts and advancement of Expenses, both of which are defined in relation to Indemnifiable Event).

[76] *See Blankenship v. Alpha Appalachia Holdings, Inc.*, 2015 WL 3408255, at *20 (Del. Ch. May 28, 2015) (unconditional indemnification obligations without regard for reasonableness of expenses or a causal nexus "would exceed the scope of indemnification that a Delaware corporation may lawfully undertake"); *Sun–Times Media Grp., Inc. v. Black*, 954 A.2d 380, 404 n.93 (Del. Ch. 2008) (noting that 8 *Del. C.* § 145(f) does not authorize indemnification contracts that are contrary to the requirements of 8 *Del. C.* § 145); *Cochran v. Stifel Fin. Corp.*, 2000 WL 286722, at *18 (Del. Ch. Mar. 8, 2000) *aff'd in part, rev'd in part*, 809 A.2d 555 (Del. 2002) (noting that contractual indemnification rights allowed under 8 *Del. C.* § 145(f) should be disturbed only if "those broader rights are contrary to the limitations or prohibitions set forth in the other section 145 subsections . . .") (internal quotation marks omitted).

31

invalidly exceed the corporation's indemnification powers as circumscribed under Section 145.[77] Although this dispute concerns advancement rather than indemnification, the definitions in the Indemnification Agreement must be applied consistently throughout the agreement. It is not reasonable to believe that the drafters of the Indemnification Agreement intended to impart a meaning to the phrase "related to the fact" that would render the indemnification provision *ultra vires*.[78]

In reaching the conclusion that the phrase "related to the fact" is equivalent to the meaning of "by reason of the fact" under Section 145, I recognize the interpretative tension that is created because the phrases "related to the fact" and "by reason of" are both present in the definition of "Indemnifiable Event."[79] "Delaware courts do prefer to interpret contracts to give effect to each term rather than to construe them in a way that

---

[77] The Company argues more broadly, without regard to the specific terms of the Indemnification Agreement, that a "corporation may not provide advancement where indemnification would be unlawful." Def.'s Ans. Br. 25. I do not reach this question, which ostensibly conflicts with the Supreme Court's pronouncement in *Tafeen* that "Section 145(e) . . . expressly contemplates that corporations may confer a right to advancement that is greater than the right to indemnification and recognizes that advances must be repaid if it is ultimately determined that the corporate official is not entitled to be indemnified." 888 A.2d at 212.

[78] Indeed, Section 2(a) calls for indemnification "to the fullest extent permitted by law." Def.'s Ex. 2 (Indemnification Agreement) at § 2(a). It is therefore not reasonable to interpret the term "Indemnifiable Event" as exceeding the boundaries of the law.

[79] To repeat, the term "Indemnifiable Event" is defined as "any event or occurrence, whether occurring before, on or after the date of this Agreement, *related to the fact* that [Charney] is or was a director and/or officer or fiduciary of the Company, or is or was serving at the request of the Company as a director, officer, employee, trustee, agent or fiduciary of another Person, or *by reason of* anything done or not done by [Charney] in any such capacity." Def.'s Ex. 2 (Indemnification Agreement) at § 1(f) (emphasis added).

32

renders some terms repetitive or mere surplusage."[80]  Although this preference to avoid

redundancy suggests that "related to the fact" should have a meaning distinct from "by

reason of" (which to my mind is substantively the same as "by reason of the fact"),  the

canon must be balanced against the reasonableness of the alternatives.  As Chancellor

Allen aptly put it, "[w]hile redundancy is sought to be avoided in interpreting contracts,

this principle of construction does not go so far as to counsel the creation of contract

meaning for which there is little or no support in order to avoid redundancy."[81]  When the

only interpretations that avoid surplusage are implausible ones, "the problem of

redundancy seems inescapable."[82]

The canon against surplusage, moreover, is most properly used to fathom the

objective intent of the contracting parties, not "to trap a careless draftsperson into

including a contract right that he did not mean to include. And [the canon] does not

change the fact that courts will not bend contract language to read meaning into the

words that the parties obviously did not intend."[83]  To the extent redundancy exists in the

---

[80] *In re IAC/InterActive Corp.*, 948 A.2d 471, 497 (Del. Ch. 2008) (quoting *W. Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*, 2007 WL 3317551, at *11 (Del. Ch. Nov. 2, 2007) *aff'd*, 985 A.2d 391 (Del. 2009)).

[81] *U.S. W., Inc. v. Time Warner Inc.*, 1996 WL 307445, at *15 (Del. Ch. June 6, 1996) (Allen, C.).

[82] *Warner Commc'ns Inc. v. Chris-Craft Indus., Inc.*, 583 A.2d 962, 971 (Del. Ch. 1989) *aff'd*, 567 A.2d 419 (Del. 1989) (Allen, C.).

[83] *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 588 (Del. Ch. 2006) (Strine, V.C.) (rejecting argument for advancement rights based on surplusage argument). *See also* Restatement (Second) of Contracts § 203 cmt. b (1981) ("The preference for an interpretation which gives meaning to every part of an agreement does not mean that

terms at issue, such minor overlap is clearly preferable to adopting an interpretation that is contrary to the parties' likely intentions, would lead to absurd results, and risks exceeding the bounds of 8 *Del. C.* § 145. Taking the clause as a whole, in my view the only reasonable interpretation is that the drafters intended the definition of Indemnifiable Event to cover suits against directors and officers based on a causal nexus between the disputed acts and their corporate powers, but not suits based on a mere "but for" connection.

This conclusion is sensible in light of the public policy behind 8 *Del. C.* § 145. When interpreting a contractual provision governing a corporation's advancement obligations, it is critical to "simultaneously apply the patina of [S]ection 145's policy."[84]

> Section 145 serves the dual policies of: (a) allowing corporate officials to resist unjustified lawsuits, secure in the knowledge that, if vindicated, the corporation will bear the expense of litigation; and (b) encouraging capable women and men to serve as corporate directors and officers, secure in the knowledge that the corporation will absorb the costs of defending their honesty and integrity.[85]

Thus, public policy supports enforcing "advancement provisions [that are] written broadly or in a mandatory fashion."[86] Conversely, in my view, Delaware public policy

---

every part is assumed to have legal consequences."); *Rag Am. Coal Co. v. AEI Res., Inc.*, 1999 WL 1261376, at *5 (Del. Ch. Dec. 7, 1999) (Strine, V.C.) (questioning whether the mandate to give full meaning to all contract provisions conflicts with "the legal community's impulse toward overinclusiveness").

[84] *Reinhard & Kreinberg v. Dow Chem. Co.*, 2008 WL 868108, at *2 (Del. Ch. Mar. 28, 2008).

[85] *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 84 (Del. 1998)

[86] *DeLucca*, 2006 WL 224058, at *22 n.33.

does not support interpreting advancement provisions in a manner that would negate the requirement of a causal connection to the use or abuse of corporate power.

In sum, for the reasons explained above, I construe the phrase "related to the fact" to be equivalent to the recognized meaning of "by reason of the fact" in the context of a corporate advancement claim. I therefore draw from Delaware's established "by reason of the fact" jurisprudence in considering whether Charney's alleged violations of the Standstill Agreement are causally connected to his former position as a director and/or officer of the Company.

### 3. The Claims in the Standstill Proceeding Are Not Causally Connected to Charney's Former Status as a Director or Officer of the Company

The complaint in the Standstill Proceeding identifies five categories of alleged violations of the Standstill Agreement. Specifically, it alleges that Charney violated the Standstill Agreement by: (i) discussing a potential takeover of the Company with Irving Place Capital in violation of Sections 3(e) and 3(f); (ii) influencing stockholders' voting decisions at employee meetings in violation of Section 3(a)(ii); (iii) disparaging the Company in violation of Section 6(b); (iv) participating in a lawsuit seeking to replace directors of the Company in violation of Sections 3(c) and 3(h); and (v) soliciting interest for nominees for a competing slate of directors in violation of Sections 3(a), 3(b), and 3(c).[87] For the reasons explained below, none of these alleged actions, all of which occurred after Charney had been suspended as an American Apparel officer and after he

---

[87] Pl.'s Ex. A (Standstill Proceeding Complaint) ¶¶ 50-80.

had resigned as an American Apparel director, is causally connected to the use or misuse of Charney's corporate power as a director or officer of American Apparel. Thus, Charney is not entitled to advancement under the Indemnification Agreement to defend against these claims.

Delaware courts typically determine whether there is a "causal connection" by "examining the pleadings in the underlying litigation . . . ."[88] There is no "causal connection" between a corporate official's acts and his or her corporate power when "the parties are litigating a specific and personal contractual obligation that does not involve the exercise of judgment, discretion, or decision-making authority on behalf of the corporation."[89] For example, in *Weaver v. ZeniMax Media, Inc.*,[90] where a former officer sought advancement for claims alleging he violated his employment agreement, the Court concluded that the alleged contractual breaches—"[t]aking too much vacation time and submitting fraudulent travel expenses"—were not causally connected to his former position as an officer because he did not use or abuse his corporate authority or position in violating the specific terms of that contract.[91]

---

[88] *Holley v. Nipro Diagnostics, Inc.*, 2014 WL 7336411, at *8 (Del. Ch. Dec. 23, 2014) (citing *Tafeen*, 888 A.2d at 214); *Weaver v. ZeniMax Media, Inc.*, 2004 WL 243163, at *4 (Del. Ch. Jan. 30, 2004) ("The Court must seek to discern the nature of the claims which [the plaintiff] is called upon to defend by reading the Counterclaim as a whole and providing a reasonable interpretation of the substance of the allegations of each count.").

[89] *Paolino v. Mace Sec. Int'l Inc.*, 985 A.2d 392, 403 (Del. Ch. 2009).

[90] 2004 WL 243163 (Del. Ch. Jan. 30, 2004).

[91] *Id.* at *5.

Charney's alleged violations of the Standstill Agreement are equivalent in my view to those of the employment agreement at issue in *Weaver*. Just as no corporate power was used or abused in taking too much vacation time or submitting fraudulent travel expenses in *Weaver*, so too was no corporate power used or abused here when Charney, after his suspension as an officer and resignation as a director, privately discussed a potential takeover with Irving Place Capital, tried to influence stockholders at employee meetings, disparaged the Company, sought to replace directors, or solicited director nominees. Charney undertook those actions solely in his personal capacity.

I first assess the causal relationship underlying the signing of the Indemnification Agreement itself, before turning to the alleged breaches. Although it is likely true that, "but for" being a director and/or officer of the Company, Charney would not have been subject to the types of obligations set forth in Sections 3 and 6 of the Standstill Agreement, that observation does not mean that any conceivable violation of the Standstill Agreement is causally connected to Charney's former positions as a director and officer. This is not a case where Charney would not have entered into the Standstill Agreement "unless he was a high-ranking corporate officer with the power to execute such contracts."[92] Indeed, Charney did not, and had no authority to, enter into the Standstill Agreement on the Company's behalf. To wit, Charney and the Company were

---

[92] *See Mooney v. Echo Therapeutics, Inc.*, 2015 WL 3413272, at *10 (Del. Ch. May 28, 2015) (concluding that a former officer and director was entitled to advancement in asserting claims against the company for breach of his employment agreement where the company raised an affirmative defense that the director and officer had violated board policies, such as hiring two individuals without the requisite company approval).

represented by separate counsel, and Charney and the Company signed on separate signature lines: Charney signed on his own behalf, and Luttrell, the Interim CEO, signed on the Company's behalf.[93] Charney's status within the Company may have formed part of the narrative leading to the execution of the Standstill Agreement, but it did not create a causal nexus with the transaction itself, which was between the Company and Charney personally.

I turn next to the alleged breaches of the Standstill Agreement. Charney's chief argument is that, under the logic of *Pontone v. Milso Industries Corp.*,[94] he is entitled to advancement because "[t]he misconduct in which American Apparel alleges [he] engaged is 'inextricably intertwined with and based on his former role as an officer' and director of the Company" in two respects.[95] First, Charney contends that "[b]ut for" his status as a former director and/or officer, "his alleged misconduct—interference with the Company's operations, efforts to regain control of American Apparel, undue influence on the 2015 annual meeting, and his disparaging statements—would not have been possible."[96] Second, Charney submits that "[u]sing the relationships he built as CEO and the knowledge he gained as a director and officer of the Company enabled [him] to take

_____

[93] Def.'s Ex. 1 (Standstill Agreement) at § 14, Signature Page.

[94] 100 A.3d 1023 (Del. Ch. 2014).

[95] Pl.'s Op. Br. 21 (quoting *Pontone*, 100 A.3d at 1051).

[96] Pl.'s Op. Br. 21-22.

the actions alleged in the [Standstill Proceeding]."[97]  I do not agree that the actions Charney actually took, divorced from the spin he now seeks to put on them, supply the necessary causal nexus.

In my opinion, the facts here are plainly distinguishable from those in *Pontone*.  In that advancement case, Pontone, a former officer and director of New Milso, sought advancement for expenses incurred in a proceeding in which New Milso asserted contract and tort claims against Pontone for allegedly exploiting the confidential information he obtained as a director and officer when he later went to work for a competitor.  New Milso's bylaws provided for mandatory advancement of expenses incurred in connection with a proceeding "by reason of" Pontone's being or having been a director or officer of New Milso.[98]  The Court perceived the "gravamen" of the allegations in the underlying proceeding to be that Pontone "engaged in a wrongful scheme to divert employees and customers," and that "this scheme was facilitated by the confidential proprietary and trade secret information [he] acquired from serving as [a] director[] and officer[] of New Milso."[99]  Accordingly, the *Pontone* Court concluded that, under the "by reason of the fact" standard in New Milso's bylaws, Pontone was entitled to advancement because "corporate powers"—confidential information he obtained as a corporate official—were used in, and necessary to, his alleged misconduct.

---

[97] Pl.'s Ans. Br. 28.

[98] *See Pontone*, 100 A.3d at 1052.

[99] *Id.* at 1051.

Here, Charney seeks to extend the concept of "corporate powers" discussed in *Pontone* to include what is essentially the social status and reputation he obtained as the "face" of the Company he founded and led for many years. Indeed, Charney uses the word "influence" throughout his briefs in reference to the supposed "corporate power" he used when allegedly violating the Standstill Agreement. In my opinion, this type of "influence" is not a "corporate power" because there is no allegation in the Standstill Proceeding that Charney inappropriately misused Company information to violate the Standstill Agreement. Put differently, basing a right to advancement on vague notions of one's persona as the founder and past leader of a corporation would render meaningless the requirement of a causal connection to the use or misuse of corporate power necessary to trigger the advancement provision in the Indemnification Agreement.[100]

Charney's former status may have made his violations of the Standstill Agreement more damaging, but that former status was not necessary for the violations themselves. Had he never been a director or officer of American Apparel, Charney still could have sought out takeover partners, even if his pitch may have been less persuasive; he still could have encouraged employee stockholders to change their voting decisions, even if they may have had less reason to follow his lead; he still could have made disparaging remarks about the Company, even if they may have fallen on deaf ears; and he still could have sued to replace directors and solicit nominees as a stockholder, even if he may have

---

[100] *See Bernstein*, 953 A.2d at 1013 (concluding that an interpretation of an advancement bylaw under which "a director fighting a speeding ticket he or she received on the way to a board meeting is entitled to advancement" would "render[] meaningless the words 'by reason of the fact' ").

been ignored. His past status only affected the magnitude of the alleged injuries caused by the breaches. Although Charney makes much of the fact that his "efforts to *regain* control of the Company by definition relate to his *previous* control of the Company,"[101] his former status is largely irrelevant to the claims asserted in the Standstill Proceeding. His attempt to *re*-take control of an enterprise he once ran may add narrative intrigue, but it is legally no different from any other attempt to *take* control. The Standstill Agreement could just as well have been entered into by an activist stockholder with a large share block attempting to take control of the Company. Whether or not that stockholder previously ran the Company has no legal effect.

Finally, that certain of Charney's alleged violations of the Standstill Agreement (the Metchek and Irving Place Capital discussions) may have occurred after he had signed the Standstill Agreement and resigned as a director but before he was terminated as CEO in December 2014 is of no moment in my view.[102] Even before he was terminated as CEO, he had already been terminated as a director and suspended as a CEO, leaving him effectively without corporate powers. Although claims challenging actions taken when one holds the title of a corporate official typically satisfy the "causal connection" standard, that condition is not dispositive, as cases such as *Weaver* demonstrate. The alleged breaches of the Standstill Agreement that these discussions

---

[101] Pl.'s Ans. Br. 22.

[102] Charney alleges that his discussions with Metchek occurred in "the third and fourth quarters of 2014," while he was employed by the Company, and that his discussions with Irving Place Capital occurred "immediately prior to his termination" as an officer in December 2014. Verified Complaint for Advancement ¶¶ 15(a)-(b).

may have caused were outside of and unrelated to Charney's corporate powers, to the extent he still retained any such powers.[103] As discussed above, Charney could have committed such breaches without the aid of his prior (or current) status with the Company. The ultimate issue is whether the claims alleged in the Standstill Proceeding are causally connected to any fiduciary-based misconduct. In my opinion, they are not.

* * * * *

In sum, for the reasons explained above, I conclude that Charney is not entitled to advancement under the Charter or under the Indemnification Agreement.

### E.      Charney is Not Entitled to Indemnification for This Action

Section 4 of the Indemnification Agreement requires the Company to "indemnify [Charney] against any and all Expenses . . . which are incurred by [Charney] in connection with any action brought by [Charney] for . . . an Expenses Advance under this Agreement . . . ."[104] At common law, "a person who successfully prosecutes a claim under 8 *Del. C.* § 145 is typically entitled to recover the reasonable expenses incurred in connection therewith unless the corporation precludes such recovery upfront in the governing document or contract providing for indemnification."[105] Given my

---

[103] *See Lieberman v. Electrolytic Ozone, Inc.*, C.A. No. 10152-VCN, at 16 (Del. Ch. Aug. 31, 2015) (finding that "[p]laintiffs' conduct as [company] officers, directors, or employees is essentially immaterial to" subsequent breach of contract claims against them).

[104] Def.'s Ex. 2 (Indemnification Agreement) at § 4.

[105] *Blankenship*, 2015 WL 3408255, at *28 (citing *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002)).

conclusions above, Charney is not entitled to summary judgment on Count II because he has not successfully prosecuted his claim for advancement for the Standstill Proceeding.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED, and Defendant's motion for summary judgment is GRANTED. The parties are directed to confer and to inform the Court within five business days as to whether there is any reason a final judgment should not be entered given the rulings in this opinion, and to submit a form of order implementing those rulings.